## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 09 2015, 5:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| R. Patrick Magrath | Gregory F. Zoeller |
| Laura Raiman | Attorney General of Indiana |
| Alcorn Sage Schwartz & Magrath, LLP | |
| Madison, Indiana | Tyler G. Banks |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brian N. McClain, | December 9, 2015 |
| *Appellant-Defendant*, | Court of Appeals Case No. 03A01-1503-CR-95 |
| v. | Appeal from the Bartholomew Superior Court |
| State of Indiana, | The Honorable James D. Worton, Judge |
| *Appellee-Plaintiff*. | Trial Court Cause Nos. 03D01-1407-FB-2968 03D01-1408-CM-3520 |

**Brown, Judge.**

[1] Brian N. McClain appeals his sentence for criminal confinement as a class B felony and invasion of privacy as a class A misdemeanor. McClain raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

## Facts and Procedural History

[2] On June 27, 2014, McClain and his wife, Y.M., argued about their separation. At some point during a series of text message exchanges while Y.M. was at work, McClain stated that he was going to kill himself or overdose. Y.M. was afraid, traveled home, and hid McClain's Xanax and his firearms. At some point while in the bedroom, McClain became upset, grabbed a goblet, and threw it at Y.M., and it struck her on the back. Y.M. ran downstairs where Edward Elliott, who was temporarily renting the basement of the home, and his three children were located and told him what had happened, and Elliott told her to leave the house and call the police. Y.M. did so and when the police arrived, she told them about McClain's history of abuse, that it was becoming increasingly worse, and that she was fearful of him, and the police arrested McClain and took him to jail.

[3] The following morning, McClain was released, and the court issued a no contact order that he have no contact in any way with Y.M. Upon learning that McClain had been released, Y.M. became scared, and she left a note for him stating where to find his suitcase, cell phone, charger, and medications in an area outside so he would not need to enter the house, and then left the house and went to a nearby restaurant with Elliott and his children. While at the

restaurant, Y.M. and Elliott observed McClain walking toward their house and that he appeared angry, and Y.M. was terrified. She waited at the restaurant, hoping that McClain would take his belongings and leave. She later returned home and found that McClain had left but had not taken his belongings.

[4] Later that afternoon, McClain returned to the house. Y.M. saw his shadow at the door reading her note. He then started to repeatedly kick the door to break inside and Y.M. opened the door. McClain rushed over to a table in the den area where there was a glass-piece chess set displayed and pushed it towards Y.M, and it struck her. She tried to run away, but McClain grabbed her and placed her on the floor, pinned her by sitting on her stomach, and punched her face and head while she tried to block his punches. He was hitting her so hard that he grunted each time he punched her, striking her twenty or more times or more, causing excruciating pain. McClain stated "This is what you get, this is what you get." Transcript at 66. Y.M. was eventually able to escape, ran into the bathroom hallway, and locked herself inside. McClain chased after her and started kicking the bathroom door until he broke the door in half. Y.M. felt like she was going to die, picked up the half-broken door to push him away, and was able to exit the bathroom. She ran through the living room and kitchen and ultimately hid in a spare bedroom.

[5] Meanwhile, Elliott had called 911. When the police arrived, they found Y.M. crying on the floor in a fetal position and McClain in a t-shirt and underwear. Y.M. told the police that, if they had not been called, McClain could have

killed her. She suffered extensive bruising to her arms and head and after the attack, Y.M. suffered dizziness and flashbacks.

[6] In an information filed on July 1, 2014 and an amended information filed August 5, 2014, under cause number 03D01-1407-FB-2968 ("Cause No. 2968"), the State charged McClain with battery resulting in serious bodily injury as a class C felony; two counts of domestic battery as class D felonies; criminal confinement as a class B felony; and two counts of stalking as class C felonies. In an information filed on August 7, 2014, under cause number 03D01-1408-CM-3520 ("Cause No. 3520"), the State charged McClain with invasion of privacy as a class A misdemeanor. He ultimately pled guilty to criminal confinement as a class B felony under Cause No. 2968 and invasion of privacy as a class A misdemeanor under Cause No. 3520.

[7] At the sentencing hearing, Y.M. testified that she was born in Japan, has lived in the United States since 1988, and that she worked for an automobile supplier company. She stated that she began dating McClain in 2006 or 2007, they married in 2010, and that, during their dating relationship and marriage, she worked full time and he worked part-time jobs here and there and took care of the house. She testified that McClain abused her emotionally, verbally, and physically both before and after they married, called her names, and made disparaging comments about her appearance and race. The court admitted several emails from McClain to Y.M. sent in May 2014, including one that said in part "I really hate you. No talent. No drive for success. No guts. No brains. . . ." State's Exhibit 6. In another, he said in part "In all honesty, you

are not aging well. I look great. I sure get attention. Time for me to date girls while you sit at home. . . ." State's Exhibit 4.

[8] Y.M. testified that during her marriage McClain pushed and kicked her, knocked down furniture, broke things in anger, and had previously threatened to kill her. The court admitted photographs taken in November 2013 showing a puncture wound that McClain inflicted on Y.M. with a knife, and a bruise on her hand which was the result of her blocking her head when McClain was punching her. She testified that, several years earlier, she and McClain had a fight and thus did not spend his birthday together, that he came home drunk late at night, and that he grabbed a gun, clicked it "and put the gun [] against [her]." Transcript at 39. She stated that McClain threatened that, if she left or divorced him, he would disclose her marijuana use to her employer and family, and that thus she wanted to be clean before leaving him.

[9] Y.M. additionally testified that McClain invited a photographer to their home, that the photographer took pictures of her in lingerie, in various states of nudity and engaged in intimate acts, and that McClain threatened her with the photographs and told her that he could send a gift package to her parents. The court also admitted several text messages McClain sent to Y.M. from June 22nd through 27th, 2014, including statements that "If you're not careful I'm going to cancel your ticket to Hawaii because that's on my card[.] I don't want to travel with a c---. Best find you a new plane ticket. Ill be at the Ohana with hookers." State's Exhibit 10. In other messages, McClain stated "I honestly think your [sic] not a real bright person," "I mow and airate [sic] the lawn in

the sun. I paint. I clean. For what," "You suffer from non stop b------- because your a mserable [sic] piece of s---," "Your job sucks," "Nobody likes you," "No man wants you," "Your [sic] weak, stupid, and unmotivated," and "Take you sagging ass on down the road." *Id.* In addition, the court admitted text messages which Y.M. stated were sent to her phone by McClain regarding a crime of passion defense, including "Well, its called a crime of passion. By law, if you catch your partner in bed with another, theres [sic] a 1 hour window to shoot him. Murder-no. Crime of pass[]ion-somewhat free pass." State's Exhibit 14. Y.M. also testified that McClain's version of events that he found her with another man is not true, that she is five foot three and weighs 115 pounds, and that McClain is six foot and three and weighs as much as 210 pounds and is a black belt in martial arts. Elliott testified that his three children, between the ages of ten and thirteen at the time, were home during the June 28, 2014 attack. He also testified that he was not involved in any relationship or sexual relationship with Y.M.

[10] McClain testified that he did not send the messages regarding a crime of passion, that someone texted those messages to Y.M. in an effort to frame a story around why he walked into his home to find Y.M. engaged with another man sexually, and that, when he went home to retrieve his belongings, he walked in on Elliott engaged in a sex act with Y.M. He testified that he had been drinking and eating at a pub before he went to his home on June 28th, that there was an altercation with Y.M., that in the course of that altercation he soiled his pants, and that after ceasing his attack he went to the bathroom to

change clothes and was arrested in the bathroom on the toilet. When asked about his pending divorce, McClain testified that Y.M. had been very difficult, that she was trying to use this incident to receive more than fifty percent of the assets, and that there were substantial assets at risk, "which is why [he] think[s] that this has been so bitter." Transcript at 149.

[11] The trial court noted that "this case is one of the most disturbing domestic violence cases that it's seen" and there "has been a consistent and repeated pattern of violence in this relationship," that it specifically believed Y.M. and found her testimony to be credible, and that "but for the grace of god are we just here on a . . . confinement case." *Id.* at 175. The court stated that the aggravating circumstances include McClain's history of criminal or delinquent behavior and history of abuse of Y.M., that three children were present in the residence downstairs, and that he violated the no contact order. The court said that it completely disagreed with the statement in the presentence investigation report ("PSI") that McClain was likely to respond affirmatively to probation or short term imprisonment, and that, while Y.M. was testifying and before McClain realized the court was looking at him, it "noted a smirk on [his] face almost a smile . . . which the Court found very disturbing." *Id.* at 178. The court also noted that McClain was released from jail and immediately violated Y.M. again. In its written sentencing order, the court found no mitigating circumstances and found the following aggravating circumstances: McClain has a history of criminal or delinquent behavior; he knowingly committed the offense in the presence or within hearing of an individual who was less than

eighteen years of age at the time of the offense; that he violated a no contact order against him; and his lack of remorse. The court sentenced McClain to eighteen years with two years suspended to probation as a community corrections placement for his conviction for criminal confinement as a class B felony and to time served for his conviction for invasion of privacy as a class A misdemeanor.

## *Discussion*

[12] The issue is whether McClain's sentence is inappropriate in light of the nature of the offenses and the character of the offender. Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[13] Our review of the nature of the offenses reveals that McClain threw a goblet at Y.M. and was arrested, the next day he was released from jail and the court issued a no contact order, and he nevertheless went to the house, while Elliott's three children were there, and attacked Y.M. He pinned her to the floor, punched her face and head at least twenty times, causing significant injuries, chased her to the bathroom, and kicked and broke the bathroom door in half.

[14] Our review of the character of the offender reveals that McClain pled guilty to criminal confinement as a class B felony and invasion of privacy as a class A misdemeanor, and the charges for battery resulting in serious bodily injury as a class C felony, two counts of domestic battery as class D felonies, and two counts of stalking as class C felonies were dismissed. According to the PSI, McClain pled guilty to resisting law enforcement as a class A misdemeanor and public intoxication as a class B misdemeanor in 2001, he was charged with leaving the scene of an accident and operating while intoxicated in 2002 but the State later dismissed the charges, and that he pled guilty to criminal mischief as a class B misdemeanor in 2012. The criminal mischief offense related to McClain cutting down his neighbor's weeds or grass with an ax and damaging a fence board. The PSI also states there was a battery in 2008 but that no charges were filed. McClain reported he has been treated for PTSD and anxiety since he was eighteen years old, that he has taken Xanax for thirty years, and that he is currently taking anti-depressants. The PSI also indicated that the risk assessment system tool placed McClain in the low risk to reoffend category. At sentencing, the trial court stated that probation or short term imprisonment would undermine the seriousness of the offenses, and noted a smirk on McClain's face while Y.M. was testifying and found it very disturbing. The evidence and testimony presented at the sentencing hearing reveals a consistent and repeated pattern of abuse and violence by McClain towards Y.M.

After due consideration, we conclude that McClain has not sustained his burden of establishing that his aggregate sentence is inappropriate in light of the nature of the offenses and his character.

## *Conclusion*

For the foregoing reasons, we affirm McClain's aggregate sentence for criminal confinement as a class B felony and invasion of privacy as a class A misdemeanor.

Affirmed.

Kirsch, J., and Mathias, J., concur.